IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| CHLOE C. THOMAS,  )<br>   )<br>    Plaintiff,  )<br>   )<br>   vs.  )<br>   )<br>SOCIAL SECURITY ADMINISTRATION,  )<br>Jo Anne B. Barnhart, Commissioner,  )<br>   )<br>    Defendant.  ) | 8:05CV24<br><br>MEMORANDUM AND ORDER |

The plaintiff filed an application for disability benefits under Title II of the Social Security Act, 42 §§ 401 et seq., on December 8, 2000. The Secretary denied the application initially and on reconsideration. Plaintiff alleges she is unable to engage in any type of substantial and gainful work activity stemming from a torn disc, and a right rotator cuff tear/tendinitis since June 4, 1999.  After a hearing on April 29, 2003, an administrative law judge ("ALJ") found plaintiff not disabled under the Act. The Appeals Council denied plaintiff's request for review on November 17, 2004. The plaintiff appeals the ALJ's finding that she is not disabled for purposes of the act, arguing that such a finding is unsupported by substantial evidence on the record as a whole. I have now reviewed the record, the ALJ's evaluation and findings, the medical evidence, the parties' briefs, the transcript, and the applicable law. I conclude the ALJ's findings are supported by substantial evidence on the record as a whole.

**Background**

Plaintiff, born on June 13, 1948, is currently 57 years of age. She has completed the twelfth grade of school and has a relevant work history as a service representative.

On March 8, 1999, the plaintiff visited Dr. Weyhrich, her treating physician at the time, complaining of back pain. Social Security Transcript ("Tr.") at 254. She reported aggravating her back on March 6, 1999, while doing a light load of laundry. *Id.* The plaintiff believed the injury to be a nuisance, and it did not limit her activities as a customer service representative for America West Airline. *Id.* Dr. Weyhrich diagnosed the plaintiff with a low back strain, limited the plaintiff's lifting at work and recommended she forgo work for a week and receive physical therapy. *Id.*

Over the next five months (April-August 1999) the plaintiff continued to visit Dr. Weyhrich. During this time, the plaintiff also complained of pain in her right shoulder. Tr. 252. On April 17, 1999, an MRI of the plaintiff's lumbar spine showed a degenerative disc disease at L5-S1 with some centrality, which could represent a small focal disc protrusion. Tr. 266. Dr. Weyhrich kept the plaintiff on light duty until June 8 when the plaintiff informed him that she had been terminated from her employment. Tr. 249.

During the June 8 visit, Dr. Weyhrich discussed the MRI with the plaintiff explaining the MRI did not show anything beyond a possible central disc bulging. Tr. 249. Dr. Weyhrich suggested the plaintiff take an antidepressant to help relieve her pain. *Id.* The plaintiff indicated no interest in taking antidepressant medicine. *Id.* On June 28, 1999, Dr. Weyhrich noted that it was unclear how often the plaintiff took her prescription of Voltaren for her back pain, and, again, suggested the plaintiff begin taking antidepressant medicine for her pain. Tr. 248. The plaintiff rejected Dr. Weyhrich's suggestion and "bristled" at the idea that she should try to engage in physical therapy more than twice a week. *Id.* The plaintiff also informed Dr. Weyhrich that her pain originated from her falling down some steps at her home. Tr. 249, 255.

On May 7, 1999, the plaintiff saw neurologist Dr. John M. Hannam. He noted the plaintiff had normal muscle tone, bulk, strength and coordination. Tr. 271. Dr. Hannam stated that he thought the plaintiff had a lumbar strain, degenerative disc disease at L5-S1 and mild spondylosis at L4-5 and L5-S1. Tr. 271. Dr. Hannam noted there was no convincing evidence that the plaintiff's back pain resulted from degenerative changes seen on her MRI, but rather were more consistent with a strain injury of the soft tissues. Tr. 272.

On August 24, 1999, Dr. Weyhrich met again with the plaintiff. On this visit, Dr. Weyhrich noted that, according to the therapist, the plaintiff complained of pain when doing her physical therapy, but if she could be distracted and continued working on the exercise, she did fine. Tr. 246. Dr. Weyhrich suggested the plaintiff take a steroid injection to help with her condition which Dr. Weyhrich noted the plaintiff did not seem willing to try. *Id.*

On September 9, 1999, the plaintiff saw Jonathon E. Fuller, M.D., on referral from Dr. Weyhrich. The plaintiff reported back pain that increased when bending, doing housework, standing in place or conducting lumbar extensor exercises. Tr. 288. Dr. Fuller explained to the plaintiff that back pain is very common, and he did not think the plaintiff could lift 70 pounds. Tr. 286. He further indicated that the plaintiff should go back to work but could get a job requiring her to lift less than 70 pounds. Tr. 286.

After her appointment with Dr. Fuller, the plaintiff phoned Dr. Weyhrich to report that Dr. Fuller diagnosed her with a "torn disk" and she disapproved of her last appointment with Dr. Weyhrich. Tr. 246. Dr. Weyhrich explained the plaintiff's symptoms, in his opinion, were due to 1) disc problems undetectable on an MRI scan; 2) depression; or 3) malingering. Tr. 246. Dr. Weyhrich, again, instructed the plaintiff of the benefits of

antidepressants for pain reduction. *Id.* Plaintiff then informed Dr. Weyhrich that she no longer wished to have him as her doctor because of their "miscommunication." *Id.*

On October 1, 1999, the plaintiff saw Bruce D. Gutnik, M.D., for a consultative psychiatric evaluation. Dr. Gutnik's evaluation indicated the plaintiff suffered from an Adjustment Disorder with mixed anxiety and mild depressed mood, and had Personality Disorder NOS with Histrionic, Obsessive, and Compulsive Schizotypal traits. Tr. 295-96. Dr. Gutnik noted the plaintiff's disorders were not disabling and she could return to work at any time without psychiatric restrictions. Tr. 296.

On January 18, 2000, the plaintiff saw Dean K. Wampler, M.D., for an independent medical evaluation. Tr. 299. During the evaluation, the plaintiff stated that she liked to sew clothes regularly but became frustrated due to her limited sitting tolerance. Tr. 300-01. Plaintiff also reported that she spent time reading, doing light housework, driving herself on errands and exercising three to four times a week by walking on a treadmill for 30 minutes and then riding a stationary bike. Tr. 301. Dr. Wampler noted the plaintiff avoided any activity that she believed might cause her distress, and she had a high perceived level of disability. *Id.*

Dr. Wampler noted the plaintiff's MRI scans showed mild to moderate degenerative changes at L5-S1 and mild degenerative change of the L5-S1 disc along with mild protrusion, but no herniation, and no pressure on the nerve structures or spinal canal. Tr. 302. In addition, Dr. Wampler stated the plaintiff's aggravation on March 5, 1999, did not stem from any event at work and "[a]s a matter of fact, the amount of degenerative disease in her low spine is less than would be anticipated by her physically demanding job over a number of years." Tr. 303. Dr. Wampler found the plaintiff could work light duty, lifting up

to 15 pounds and should avoid prolonged forward stooping and bending. Tr. 304. Dr. Wampler also stated the plaintiff could change position from sitting to both standing and walking periodically through a work shift. *Id.*

On May 3, 2000, Dr. Fuller indicated on a Medical Statement of Ability to do Work-Related Activities form that the plaintiff's abilities to lift and carry are affected by her impairment[1]. Tr. 277. Dr. Fuller also indicated the plaintiff's abilities to stand and walk were not affected and she could stand and/or walk for a total of eight hours in an eight-hour workday. *Id.*

On April 19, 2000, plaintiff visited Todd D. Fleischer, Ph.D., for a consultative psychological evaluation. During the evaluation, plaintiff reported engaging in activities such as watching television, reading, attending church once a week, doing her stretching exercises, making breakfast, taking her medication (Percocet), cooking, dusting, laundry, and light vacuuming. Tr. 316. Dr. Fleischer diagnosed the plaintiff with a pain disorder associated with both psychological factors and a general medical condition, along with an Adjustment Disorder with mixed anxiety and depressed mood. Tr. 318. Dr. Fleischer also noted the plaintiff had a Personality Disorder with Histrionic and Obsessive Compulsive traits. *Id.* Dr. Fleischer found the plaintiff's mental health did not appear to impair her ability to complete daily chores and she appeared to be capable of interacting in a socially appropriate manner at work settings. Tr. 318.

On February 12, 2001, treating physician Kurt V. Gold, M.D., found the plaintiff to be significantly functionally limited. Tr. 376. In a letter dated June 12, 2002, Dr. Gold

---

[1] Dr. Fuller indicated a lifting limitation on the Medical Statement of Ability to do Work-Related Activities form; however, it is illegible. Tr. 277.

5

stated that he believed the plaintiff had a variant of Polymyalgia Rheumatica along with a possible right rotator cuff tear and associated chronic pain syndrome. Tr. 530.  Dr. Gold indicated the plaintiff should not seek gainful employment and did not anticipate the plaintiff's condition would improve significantly without more successful treatment. *Id.*

On August 29, 2002, Peter M. Daher, M.D., examined the plaintiff for pain in her shoulder. Dr. Daher stated he believed the plaintiff suffered from lumbosacral strain, cervical strain, and right shoulder tendinitis. Tr. 569.  Dr. Daher also noted that he found it difficult to assess the plaintiff and her pain appeared to be mostly subjective and very hard to ascertain. *Id.*

Robert N. Brown, M.D., treated the plaintiff over the coarse of three visits.  Tr. 45. In a letter dated June 12, 2002, Dr. Brown noted the plaintiff suffered from a torn supraspinatus tendon and due to the plaintiff's pain and her upper body impairment, she was precluded from performing any work activity at that time. Tr. 529.  In a letter dated September 19, 2002, Dr. Brown indicated he believed the plaintiff suffered from fibromyalgia syndrome causing her to be totally and permanently disabled and would be in such a condition for an extended period.  Tr. 570.

Chiropractor Shawn Schmidt treated the plaintiff for back pain.  In a letter dated June 11, 2002, he indicated the plaintiff suffered from a chronic severe spinal and shoulder condition, she was disabled and precluded from performing any physical work. Tr. 528. On February 23, 2003, Mr. Schmidt completed a "Physician's Statement of Continuous Total Disability" where he indicated the plaintiff was completely disabled and he anticipated no improvement. Tr. 581.

At the hearing before the ALJ, the plaintiff testified that she could only lift two pounds at a time and complained of feeling pain all over her body. Tr. 55, 63. The plaintiff testified that she lived by herself but does "practically nothing" and has help with performing housework and many other daily activities except for preparing her own meals and doing laundry. Tr. 57-58. The plaintiff denied attending church or being able to vacuum and admitted to only taking half the neurontin dosage prescribed by Dr. Gold. Tr. 58-59, 64.

Gail Leonhardt, a qualified vocational expert, testified at the hearing. The ALJ presented a hypothetical question to Mr. Leonhardt asking if a person 50 years of age with a 12th grade education, degenerative disk disease of the L5-S1, tendinitis of the right shoulder with a decreased range of motion, a diagnosed affective disorder, a diagnosed anxiety disorder, able to lift 20 pounds occasionally and 10 pounds frequently, could work as a customer service representative as performed in the national economy. Tr. 72. Mr. Leonhardt testified the plaintiff could not perform her old duties requiring her to lift 70 pounds but could perform such a duty only requiring her to be able to lift 20 pounds, as described by the U.S. Department of Transportation. Tr. 72-73.

**Standard of Review**

A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423 (D)(1)(A); 20 C.F.R. § 404.1505. A claimant is considered to be disabled when the claimant is "not only unable to do his previous work but cannot, considering his age, education, and work experience, engage

in any other kind of substantially gainful work which exists in [significant numbers in] the national economy. . . ." 42 U.S.C. § 432 (D)(2)(A).

> The ALJ evaluates a disability claim according to a five-step sequential analysis prescribed by Social Security regulations. The ALJ examines any current work activity, the severity of the claimant's impairments, the claimant's residual functional capacity and age, education and work experience. *See* 20 C.F.R. § 404.1520(a); *Braswell v. Heckler*, 733 F.2d 531, 533 (8th Cir. 1984). If a claimant suffers from an impairment that is included in the listing of presumptively disabling impairments (the Listings), or suffers from an impairment equal to such listed impairment, the claimant will be determined disabled without considering age, education, or work experience. *See Braswell*, 733 F.2d at 533. If the Commissioner finds that the claimant does not meet the Listings but is nevertheless unable to perform his or her past work, the burden of proof shifts to the Commissioner to prove, first, that the claimant retains the residual functional capacity to perform other kinds of work, and second, that other such work exists in substantial numbers in the national economy. *See Nevland v. Apfel*, 204 F.3d 853, 857 (8th Cir. 2000). A claimant's residual functional capacity is a medical question. *See id.* at 858.

*Singh v. Apfel*, 222 F.3d 448, 451 (8th Cir. 2000).

When reviewing the decision not to award disability benefits, the district court does not act as a fact finder or substitute its judgment for the judgment of the ALJ or the Commissioner. *Bates v. Chater*, 54 F.3d 529, 532 (8th Cir. 1995). Rather, the district court will affirm the Commissioner's decision to deny benefits if it is supported by substantial evidence in the record as a whole. *Eback v. Chater*, 94 F.3d 410, 411 (8th Cir. 1996). "Substantial evidence is that which a reasonable mind would find as adequate to support the ALJ's decision." *Brown v. Chater*, 87 F.3d 963, 964 (8th Cir. 1996) (*citing Baumgarten v. Chater*, 75 F.3d 366, 368 (8th Cir. 1996)). In determining whether the evidence in the record is substantial, the court must consider "evidence that detracts from the Commissioner's decision as well as evidence that supports it." *Warburton v. Apfel*, 188 F.3d 1047, 1050 (8th Cir. 1999). If the record contains substantial evidence supporting the

Commissioner's decision, the court may not reverse the decision either "because substantial evidence exists in the record that would have supported a contrary outcome, or because [the court] would have decided the case differently." *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000) (citations omitted).

**Discussion**

**A. ALJ's Findings**

The ALJ determined the record establishes that the plaintiff suffers from degenerative disc disease at L5-S1, tendinitis of the right shoulder, Anxiety Disorder, Somatoform Disorder, Personality Disorder and Affective Disorder imposing more than slight limitations upon her ability to function. Tr. 47. The ALJ concluded, in spite of such limitations, the plaintiff is able to perform her past relevant work as a customer service representative as such a job is described in the Dictionary of Occupational Titles, under the "light" exertional level. *Id*. Accordingly, the ALJ found the plaintiff not disabled as that term is defined under the Social Security Act pursuant to 20 C.F.R. 404.1520(e). *Id*.

**B. Evidence on the Record**

The plaintiff appeals the ALJ's finding, arguing the ALJ's findings are unsupported by substantial evidence on the record as a whole. It is undeniable the plaintiff suffers from discomfort and pain due to her back and shoulder injuries. However, mere presence of pain does not relegate a person to disability status. The record presents substantial evidence to support the ALJ's finding the plaintiff is not disabled.

Dr. Hannam stated on May 7, 1999, that there is no convincing evidence that plaintiff's back pain stemmed from degenerative changes on her MRI but rather consistent with a strain injury of soft tissue Tr. 272. On June 8, 1999, treating physician Dr. Weyhrich

9

opined the plaintiff's MRI did not show any injury beyond a possible central disc bulging. Tr. 246.  Doctors Weyhrich and Hannam's opinions are further echoed by treating physician Dr. Fuller on September 9, 1999, when he explained to the plaintiff that back pain is very common and, although he did not think that plaintiff could lift 70 pounds, she could get a job requiring her to lift less than 70 pounds.  Tr. 286.  Dr. Fuller further noted on a  May 3, 2000 Medical Statement of Ability to do Work-Related Activities form that the plaintiff's abilities to stand and walk were not affected and she could stand and/or walk for a total of eight hours in an eight-hour workday.  Tr. 277.

On January 18, 2000, treating physician Dr. Wampler stated that the amount of degenerative disease in the plaintiff's back is less than would be expected for someone with her physically demanding job.  Tr. 303.  Dr. Wampler  found the plaintiff could work light duty, lifting up to 15 pounds and should avoid prolonged forward stooping and bending.  Tr. 304.  Dr. Wampler also stated the plaintiff could change position from sitting to both standing and walking periodically through a work shift.  *Id.*

The record also presented substantial evidence on the plaintiff's mental condition. On October 1, 1999, Psychiatrist Dr. Gutnik found the plaintiff's disorders required no restrictions at work and that she could return to work at any time from a psychiatric standpoint. Tr. 296-97. Psychologist Todd Fleischer noted on May 5, 2000, the plaintiff functioned in an average range of intelligence and mental health factors did not impair her ability to preform daily activities. Tr. 317-18.

The plaintiff argues the doctors' opinions conflict with those of Dr. Kurt V. Gold, Dr. Robert N. Brown and Mr. Shawn Schmidt. "The opinion of a treating specialist control if it is well-supported by medically acceptable diagnostic techniques and is not inconsistent

with other substantial evidence." *Kelley v. Callahan*, 133 F.3d 583, 589 (8th Cir. 1998). "In reviewing applications for social security benefits, ALJ may grant less weight to a treating physician's opinion when that opinion conflicts with other substantial medical evidence contained in the record." *Prosch v. Apfel*, 201 F.3d 1010, 1010 (8th Cir. 2000).

In support of the plaintiff's position, Dr. Gold wrote in a letter dated June 12, 2002, he did not recommend the plaintiff for gainful employment and did not anticipate the plaintiff's condition would improve significantly without more successful treatment. In a letter dated September 19, 2002, Dr. Brown indicated he believed the plaintiff suffered from fibromyalgia syndrome causing her to be totally and permanently disabled and would be in such a condition for an extended period. Plaintiff's chiropractor, Mr. Schmidt, stated on both June 11, 2002 and February 23, 2003, the plaintiff is precluded from any physical work activities under any circumstances due to the fact she is totally disabled. To further support her claim, the plaintiff testified at the ALJ's hearing as to the extent of her alleged disability. She testified that she does "practically nothing" herself and denied attending church or being able to vacuum.

To support the plaintiff's claim of disability, she relies on Dr. Gold, Dr. Brown and Mr. Schmidt. Dr. Gold's opinion is noted by the court but fails to be persuasive in the face of the numerous medical opinions indicating the plaintiff can still perform some work. Dr. Brown's opinion also flies in the face of the majority of the evidence on the record and is further discredited by the fact that he only saw the plaintiff over three visits. Because Mr. Schmidt is a chiropractor, his opinion can only be used to consider what affects the plaintiff's injuries have on her ability to work, not whether or not the plaintiff can work. 20 C.F.R. § 404.1513(d).

Looking to the record as a whole, the ALJ's findings are supported by substantial evidence. The majority of the plaintiff's treating physicians failed to find the plaintiff disabled. Doctors Weyhrich, Fuller and Wampler indicated that the plaintiff could perform some work activity. Tr. 251, 252, 277, 286, 303-04. In addition, Dr. Gutnik and Psychologist Todd Fleischer reported the plaintiff did not suffer from any mental illness precluding her from work. Tr. 297, 283.

The ALJ stated, "[t]he undersigned does not give significant weight to statements in the record that the Claimant is 'totally disabled' and unable to work, and it is noted that such statements are not supported by the objective evidence of record, including the reporting chiropractor's and physicians' own records (e.g., Dr. Brown's officer notes indicate that he had only seen her on three occasions, i.e., once in November 2000 and two times in August 2002), and no specific finding on examination were detailed." (Citations omitted). Tr. 44-45. The court agrees.

In addition, the plaintiff's testimony at the hearing conflicts with her previous statements made to treating and consulting physicians. At the hearing, the plaintiff testified to doing "practically nothing" herself and denied ever attending church or being able to vacuum since her injury. Tr. 57-59. However, plaintiff reported to Dr. Wampler on January 18, 2000, that she engaged in sewing, reading, doing light housework, driving herself on errands and exercising three to four times a week. Tr. 300-01. On May 5, 2000, the plaintiff indicated to Dr. Fleischer that she watched television, read, attended church once a week, made breakfast in addition to cooking, doing laundry and light vacuuming. Tr. 316. The plaintiff's statements to Dr. Wampler and Dr. Fleischer conflict with her testimony at the ALJ's hearing and suggest she is not completely disabled.

When reviewing an ALJ's opinion not to award disability benefits, the court will affirm the ALJ's opinion if it is supported by substantial evidence on the record. The plaintiff in the present case has failed to meet her burden showing that substantial evidence supporting the ALJ's opinion is lacking. Consequently, the court concludes that the ALJ's findings are supported by substantial evidence.

THEREFORE, IT IS ORDERED that the findings and conclusions of the ALJ are affirmed and this case is dismissed. A separate judgment and dismissal will be entered in accordance with this memorandum and order.

DATED this 19th day of January, 2006.

BY THE COURT:

s/ Joseph F. Bataillon
JOSEPH F. BATAILLON
United States District Judge